UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80304-CIV-MIDDLEBROOKS/MCCABE

MARY ANNETTE LAMIRANDE,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON SOCIAL SECURITY APPEAL

THIS CAUSE came before the Court on an Order of Reference from United States District Judge Donald M. Middlebrooks for a Report and Recommendation regarding the parties' cross-motions for summary judgment. (DE 28, DE 30). The Claimant has timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for judicial review under 42 U.S.C. § 405(g). After careful consideration of the administrative record, the legal briefs, and the parties' oral argument, the undersigned recommends that the Commissioner's final decision be **AFFIRMED.**

### I.  Procedural History

The Claimant filed for disability benefits on August 9, 2018, alleging onset of total disability commencing on August 22, 2017. (R. 178-86). The Social Security Administration ("SSA") denied the claim on October 19, 2018. (R. 74-85). The SSA also denied the Claimant's appeal for reconsideration on February 20, 2019. (R. 88-100).

Thereafter, Claimant requested a hearing before an Administrative Law Judge ("ALJ"), which took place on July 22, 2020. (T. 29-54). The ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i-v). *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) (explaining how the ALJ engages in the five-step process).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity from her alleged onset date of disability. At step two, the ALJ found that Claimant had "severe" impairments of diabetes mellitus, peripheral neuropathy, peripheral vascular disease, depression, and anxiety, as well as "non-severe" impairments of diabetic retinopathy, hypertension, spinal disorder, and gastroesophageal reflux disease. At step three, the ALJ found that none of Claimant's impairments or combinations of impairments met the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that Claimant had the residual functional capacity or "RFC" to perform "light work" as defined in 20 C.F.R. § 416.967(b). Specifically, the ALJ found as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except the individual can sit, stand and walk for six hours. The individual can push/pull as much as they can lift/carry. The individual can operate hand controls with the right hand frequently and can operate hand controls with the left hand frequently. The individual can handle items frequently with the left hand and frequently with the right hand. The individual can frequently finger with the left and right hands. The individual can climb ramps and stairs frequently and ladders, ropes, and scaffolds occasionally. The individual can balance, stoop, kneel, crouch and crawl frequently. The individual is able to perform simple and repetitive tasks but not at a production rate pace (e.g. assembly line work). The individual is able to perform simple work-related decisions and can frequently interact with supervisors, coworkers and the public.

(R. 19).

At step four, the ALJ determined that Claimant had no past relevant work for comparison purposes. And finally, at step five, the ALJ determined that a significant number of "light work" jobs exist in the national economy that Claimant can still perform, given her RFC. As such, the ALJ found the Claimant "not disabled." On August 17, 2020, the ALJ issued a written decision to that effect.

Following the ALJ's written decision, the Claimant sought review from the Appeals Council, which was denied. (R. 1-6). This appeal followed.

## II.     Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). This Court will regard the Commissioner's findings of fact as conclusive so long as they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence is … more than a scintilla – i.e., evidence that must do more than create a suspicion of the existence of the fact to be established," and it must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th

3

Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). So long as substantial evidence supports the Commissioner's decision, and the Commissioner followed proper legal standards, this Court must affirm. *See Winschel*, 631 F.3d at 1178.

### III. Discussion

The Claimant raises three issues in this appeal. First, she argues the ALJ gave insufficient weight to the medical opinions of Dr. Darnel Dabu and "cherry-picked" evidence within the record to conclude that Dr. Dabu's opinions were not persuasive. Second, Claimant argues the ALJ erred by not fully explaining, in his written decision, why he rejected Dr. Dabu, with specific reference to the "consistency" and "supportability" factors set forth in 20 C.F.R. §§ 404.1520c(c)(1-2) and 416.920c(c)(1-2). Finally, Claimant argues the ALJ erred by ignoring or rejecting medical evidence that showed the Claimant needed a cane to ambulate, a factor that would have altered the RFC determination. As set forth below, the undersigned finds no error.

#### A. Cherry-picking

The Claimant first argues the ALJ committed error by rejecting the opinions of Dr. Dabu, a physician who offered medical support for Claimant's disability. Dr. Dabu opined, *inter alia*, that the Claimant had "significant limitations in her ability to lift, sit, stand, walk, manipulate and would miss more than four days a work per month because of her conditions or treatment." (R. 22, 714-15). The ALJ rejected these opinions, finding Dr. Dabu's medical source statement not persuasive because it was "inconsistent with the medical record leading up to November 19, 2018, and thereafter." (R. 22). Claimant argues this was error because the ALJ "cherry-picked" evidence within the record that conflicted with Dr. Dabu's opinions and ignored other evidence that would have supported those opinions.

4

The Court disagrees for two reasons. First, Claimant supports her argument by relying on caselaw decided under the so-called "treating physician rule," a rule that no longer applies under SSA regulations. As to claims filed after March 27, 2017 – which includes this claim – ALJs are not bound by the "treating physician rule," which previously accorded some deference to evidence offered by a claimant's treating physician. *See* 20 C.F.R. § 416.927(c)(2) (requiring the ALJ to give more weight to a claimant's treating physician's medical opinion); *see also Winschel*, 631 F.3d at 1179 ("[W]ithout clearly articulated grounds for such a rejection [of the treating physician's opinion] [pursuant to 20 C.F.R. § 416.927(c)(2)], we cannot determine whether the ALJ's conclusions were rational and support by substantial evidence."). Under the revised regulations, ALJs need not accord deference but instead must consider the opinions of treating physicians and all other medical sources using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *See* 20 C.F.R. § 416.920c(c)(1-5).

Second, and at any rate, the Court finds the ALJ's conclusions were supported by substantial evidence. This matter was fully contested before the ALJ, who considered all of the evidence, much of it in conflict. On review, the role of this Court is not to reweigh this evidence, but to assess whether the ALJ followed proper legal procedures and reached conclusions that were supported by substantial evidence. *See Phillips*, 357 F.3d at 1240 n.8 (reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]"). The Court finds no error.

**B.     Consistency and Supportability Factors**

The Claimant next argues that the ALJ failed to follow SSA regulations that required him to explain, in his written decision, why he rejected Dr. Dabu's opinions. In particular, SSA

5

regulations required the ALJ to consider Dr. Dabu's opinions using the five factors set forth in 20 C.F.R. §§ 404.1520c(c) and 416.920c(c). Under these regulations, the "most important" of these factors are "consistency" and "supportability." 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). As to these two factors, the regulations provide that the ALJ "will explain" how he or she considered these factors. *See id.*

Claimant argues the ALJ failed to explain these two most important factors in his written decision. The Court will address each factor in turn.

### 1. Consistency

As to consistency, the ALJ's written decision contained an entire paragraph devoted to Dr. Dabu's medical source statement. That paragraph expressly used the word "inconsistent" and cited to six record examples of inconsistencies. The ALJ held as follows:

> On November 19, 2018, Dr. Dabu noted the claimant was limited because of diabetes mellitus, neuropathy, back pain, neck pain, depression and anxiety (B18Fpg. 2). They noted the claimant had significant limitations in her ability to lift, sit, stand, walk, manipulate and would miss more than four days a work per month because of her conditions or treatment thereof (B18F pgs. 2, 3). *However, this assessment was not considered persuasive because it was inconsistent with the medical record leading up to November 19, 2018, and thereafter*. For instance, a notation from June 10, 2019, indicated the claimant's blood sugar levels were improving (B17F pg. 26). On June 18, 2019, her provider noted the claimant's blood sugar levels were improving and ran around the 100-140's range (B17F pg. 26). The claimant was in no acute distress on November 14, 2019 (B20F pg. 82). At that time, she admitted she exercised, which tended to show she had no significant functional limitations (B20F pg. 82). On February 6, 2020, her provider noted the claimant's blood sugar levels were improving (B17F pg. 26). At the hearing, the claimant testified she drove occasionally, which tended to show she could adequately use her hands.

(R. 22) (emphasis added). Claimant nevertheless assigns error, arguing that none of the six examples were "genuine" inconsistencies and that the ALJ should have given more overall weight to Dr. Dabu's opinions.

The Court disagrees and will not disturb the ALJ's findings. The ALJ did not make a naked or conclusory finding of inconsistency; instead, he cited to numerous record examples showing inconsistency between Dr. Dabu's opinions and other portions of the record. The Court disagrees that these inconsistencies were not "genuine." Rather, the Court finds that the ALJ followed proper legal standards and reached conclusions supported by substantial evidence. The Court will not reweigh the evidence or substitute its judgement for that of the ALJ. *See Phillips*, 357 F.3d at 1240 n.8 (reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]").

### 2. Supportability

As to supportability, Claimant correctly points out that the ALJ failed to use the word "supportability" in his written findings regarding Dr. Dabu. As such, Claimant contends, the ALJ failed to comply with 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2), which required him to "explain" how he considered the "supportability" factor.

In response, the Commissioner argues that the SSA regulations impose no requirement to use magic words such as "support" or "supportability," so long as the ALJ, in substance, complies with the regulatory mandate to explain supportability. The undersigned agrees with the Commissioner. *See generally Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 916 (11th Cir. 2013) ("*Winschel* does not, however, stand for the proposition that an ALJ must intone the *magic words* concentration, persistence, and pace if the ALJ finds based on the PRT that a claimant has limitations in that broad functional area.") (emphasis added).

Here, the regulations required the ALJ to explain the two factors of "consistency" and "supportability." *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). On the surface, these two concepts seem similar in nature, especially when applied to a medical source that the ALJ has

7

chosen to reject. The regulations appear to draw the following distinction between the two factors: "supportability" focuses on a comparison to the medical source's own records, while "consistency" focuses on a comparison to other medical and non-medical sources in the record. *See* 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1) (explaining supportability); 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2) (explaining consistency); *see also Cook v. Comm'r Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. April 6, 2021) (discussing the differences between "supportability" and "consistency").

Given these regulatory definitions, the Court finds that the ALJ's written decision adequately explained the supportability factor, even though the ALJ did not use the words "support" or "supportability." In particular, the ALJ's written decision cited to six record examples to explain why he found Dr. Dabu unpersuasive. Three of the examples came from Dr. Dabu's own records. (R. 697-98). Given that "supportability" focuses on a comparison to the medical source's own records, the ALJ adequately and in substance explained this factor, even though he never used the express term "supportability." The Court finds no error.

**C.     Use of a Cane**

The Claimant next argues the ALJ committed error by failing to incorporate the Claimant's use of a cane into the RFC. As articulated by the ALJ, the RFC imposed no restriction whatsoever to account for the use of a cane. Had it done so, Claimant argues, this factor would have significantly reduced the level of work Claimant could perform.

At the outset, the Court disagrees that the ALJ ignored the cane altogether. The ALJ expressly mentioned Claimant's use of a cane in the decision. (R. 20). As such, the ALJ was aware, and did not ignore, that Claimant alleged the need for a cane to ambulate.

Claimant's real complaint is that the ALJ did not agree the cane was medically necessary. On this front, the record contained conflicting evidence as to the medical necessity of the cane. On the one hand, Claimant testified she needed a cane to ambulate and stand up (R. 38), and Claimant's counsel cited to the record showing that Claimant "ambulates with a cane secondary to neuropathy" (R. 38-39, 697). On the other hand, the record included a clinical note indicating that Claimant left the cane in her car during an office visit (R. 976), and another note indicating that Claimant exercised and walked her dog (R. 963).

Also, the SSA has provided the following administrative guidance to assist ALJs in determining the medical necessity of "hand-held assistive devices":

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).*

S.S.R. 96-9p. at 7 (emphasis added). Here, the record contained evidence that the cane had been prescribed at some point in the past, but there was no evidence as to the circumstances under which it was prescribed, such as temporal duration, distance parameters, or other relevant information to help the ALJ determine medical necessity.

In light of the conflicting and often insufficient evidence on this point, the Court will not re-weigh the evidence and substitute its own judgment for that of the ALJ. *See Phillips*, 357 F.3d at 1240 n.8 (reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]"). Instead, the Court finds that the ALJ followed proper legal standards and that his conclusion regarding the medical necessity of the cane was supported by substantial evidence. The Court finds no error.

**IV.     Conclusion and Recommendation**

For the reasons stated above, it is **RECOMMENDED** that:

1. The ALJ's final decision be **AFFIRMED;**

2. The Plaintiff's Motion for Summary Judgment (DE 28) be **DENIED**; and

3. The Defendant's Motion for Summary Judgment (DE 30) be **GRANTED**.

**V.     Notice to the Parties**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND RECOMMENDED** in Chambers at West Palm Beach, Florida, this 20th day of April 2022.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE